UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: | ) Bankruptcy Case<br>) No. 07-60674-fra7 |
| CEDAR S. WARREN, | )<br>) MEMORANDUM OPINION |
| Debtor. | ) |

## I. INTRODUCTION

Cedar Warren, the Debtor, is indebted to Robert and Barbara Dorroh, based on a judgment from a California Superior Court for over $16 million. Debtor scheduled as an asset a "bad faith" claim against his insurer, Deerbrook Insurance Company ("Deerbrook"), based on Deerbrook's failure to settle the claim prior to trial in California.

The Trustee proposes to sell the bad faith claim to Deerbrook. Dorrohs object, asserting that the claim is equal in value to the judgment awarded in the Superior Court, and that, by accepting Deerbrook's proposal the Trustee ensures that the Dorrohs' ultimate recovery is limited to $125,000, the net value of the sale to the estate.

The matter came on for trial on January 4, 2010, with closing arguments on February 11. After considering the evidence and arguments of the parties, the Court concludes that the bad faith claim is of

Page 1 - MEMORANDUM OPINION

limited, if any, value, and that the Trustee's proposal should be allowed.

## II. BACKGROUND

On March 13, 2000, Debtor and Robert Dorroh were involved in a serious traffic accident in Tuolumne County, California. Dorroh was grievously injured, and permanently disabled. Documents available at trial indicate that Warren had spilled a cup of coffee while driving, thereby precipitating the accident, and that he freely admits his liability.[1]

Dorroh ultimately pursued claims against the Debtor, Ford Motor Company, which manufactured the vehicle he had been driving, Tuolumne County, and the State of California. Since he had been on his way to work at the time of the accident, he also filed a workers' compensation claim.

Debtor had been driving a vehicle owned by his parents. His family was insured by Deerbrook, under a policy containing a $15,000 limit. Given the circumstances of the case, Deerbrook agreed to settle all claims against Debtor for the policy limits. Since the workers' compensation carrier had notified Deerbrook that it claimed subrogation rights to the proceeds of the Deerbrook policy, Deerbrook advised Dorrohs' counsel that its check would have to be made payable to both Dorroh and the workers' compensation carrier.

Dorrohs' attorneys rejected the proposal, stating to Deerbrook that the workers' compensation carrier had denied coverage. Deerbrook

---

[1] Mr. Warren did not appear at the trial before this Court.

Page 2 - MEMORANDUM OPINION

asked for verification of the denial, but never received it. In fact, the carrier had initially denied coverage, based on Dorrohs' failure to provide required documentation. While the letter denying the claim, dated July 11, 2000, seemed absolute in its terms, it was accompanied by letters also dated July 11 encouraging Mr. Dorroh to submit information substantiating his claim. Reading the letters together, it is clear that the denial of the claim was not absolute, but premised solely on the state of the record at that point.

Dorroh insisted that the $15,000 be paid to him free of any competing claim. Deerbrook countered that it was legally bound to honor the workers' compensation carrier's subrogation rights. The impasse persisted and the matter eventually went to trial before the Superior Court in Tuolumne County.[2] After a bench trial, the Dorrohs were awarded a judgment of $16,530,169.66. Deerbrook took the judgment up on appeal, arguing that a greater proportion of the overall liability should have been attributed to Ford Motor Company (which had settled prior to trial). The judgment was affirmed on appeal.

Although the Debtor scheduled a claim against Deerbrook as an asset, it is essentially the Dorrohs who assert in the bankruptcy proceeding that Deerbrook is indebted to the Debtor (and hence his estate in bankruptcy) in an amount equal to the judgment entered in the Superior Court. Their theory is that Deerbrook had a duty to the Debtor to settle within its policy limits, and failed to do so. It follows that, under

---

[2] Dorrohs had sought and received an order from this Court allowing the matter to go forward in order to liquidate Dorrohs' claim against Warren. The motion for relief from the stay made no mention of the dispute between Dorroh and Deerbrook.

Page 3 - MEMORANDUM OPINION

California law, the insurer is liable to the insured for the amount awarded at trial. After considerable discussion, and some dickering, between the Trustee and the Dorrohs, the Trustee finally reached an agreement with Deerbrook wherein Deerbrook would acquire the claim for $125,000. Dorrohs objected, and in objecting indicated they were prepared to make a better offer. The Court instructed the parties to set their "bottom line" offers out in writing, and file them with the Court: Deerbrook's offer is attached to this opinion as Appendix A, and Dorrohs' as Appendix B.

### III. ANALYSIS

The Trustee proposes to sell an asset of the estate - the Debtor's bad faith claim against Deerbrook - pursuant to Code § 363. The sale is the means of concluding a compromise of the disputed claim itself. As the criteria governing the Court's review of asset sales and compromises are slightly different, or at least described differently, a review of both lines of authority in this Circuit must be undertaken to ascertain the standards applicable here.

In In re A & C Properties, 784 F.2d 1377 (9th Cir. 1986), the Court of Appeals held that the Bankruptcy Court must determine that a proposed settlement be fair, equitable and reasonable. The criteria to be considered in this analysis include:

- The probability of success in the litigation;
- The difficulties, if any, to be encountered in the matter of collection;
- The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

Page 4 - MEMORANDUM OPINION

1  •       The paramount interest of the creditors and a proper deference
2          to their reasonable views in the premises.
3  Id. at 1381. Courts reviewing the fairness of a proposed compromise
4  generally accord deference to the Trustee's business judgment in deciding
5  whether to settle a matter. In re Mickey Thompson Entertainment Group,
6  292 B.R. 415, 420 (9th Cir. BAP 2003). The trustee, however, "has the
7  burden of persuading the bankruptcy court that the compromise is fair and
8  equitable and should be approved." Id.

9          "The opposition of the creditors of the estate to approval of a
10 compromise may be considered by the court, but is not controlling and
11 will not prevent approval of the compromise where it is evident that the
12 litigation would be unsuccessful and costly." Official Unsecured
13 Creditors' Comm. v. Beverly Almont Co. (In re The General store of
14 Beverly Hills), 11 B.R. 539, 541 (9th Cir. BAP 1981). The court observed:

>       The function of compromise is to avoid litigation
>       involving delay and expense unless there appears to be
>       a sound legal basis for the litigation and a
>       likelihood of substantial benefit to the estate
>       (citation omitted). Approval of compromise is
>       appropriate if the court finds that the outcome of the
>       litigation is doubtful, but even when a compromised
>       dispute was based on a substantial foundation and was
>       not clearly invalid as a matter of law, approval of
>       compromise is not an abuse of the court's discretion.

21 General Store of Beverly Hills, 11 B.R. at 541.

22         Approval of a sale of an asset requires the court to consider
23 the sale provisions of Bankruptcy Code § 363, as implemented by
24 Fed.R.Bankr.P. 6004 and the 'compromise' procedure of Fed.R.Bankr.P.
25 9019(a). Mickey Thompson Entertainment Group, Inc. at 421. Thus, "[w]hen
26 confronted with a motion to approve a settlement under Rule 9019(a), a

Page 5 - MEMORANDUM OPINION

bankruptcy court is obliged to consider, as part of the 'fair and equitable' analysis, whether any property of the estate that would be disposed of in connection with the settlement might draw a higher price through a competitive process and be the proper subject of a section 363 sale." Id. at 421-22.

This case presents, as the Court noted at trial, a hybrid: a disputed claim belonging to the estate is sought to be compromised by way of a sale of the claim itself. In order to assess whether the Trustee's proposed disposition is appropriate, the Court must evaluate the asset that is, determine the likely judgment if the matter goes to trial, and whether it can be collected.[3] The gross value of the case must be offset by the likely costs of the litigation, which in turn will be a function of the amount at stake and the complexity of the issues. Finally, the Court must give deference to, while not being controlled by, the interest of creditors. As discussed below, the interest of creditors must be viewed objectively by the Court, rather than based solely on the claims of the creditors themselves.

Approval of a compromise is appropriate if the court finds that the outcome of the litigation is doubtful. General store of Beverly Hills, 11 B.R. at 541. The Court finds that the estate, if it were to bring the bad faith claim to trial, would not be likely to prevail. The loss that precipitated this controversy, and the actions of the claimants and insurers that followed, and the ensuing trial all took place in California. It follows that any claim the Debtor might have

---

[3]Not thought to be factor in this case.

Page 6 - MEMORANDUM OPINION

against Deerbrook is governed by California law. In California, an insurance contract is subject to an implied covenant of good faith, which requires that an insured will do nothing to injure the rights of the insured. In light of this covenant, an insurer which wrongfully refuses to defend the insured, or without justification refuses to settle a claim, may be liable to the insured for any judgment that results. See Comunale v. Traders and General Ins. Co., 50 Cal.2d 654, 328 P.2d 198 (1958).

In this case, recall that Deerbrook was presented with conflicting claims: Dorroh rejected any tender of the $15,000 policy limits unless free of any third party claim. On the other hand, the workers' compensation carrier had put the insurer on notice that it claimed a right to the proceeds to the extent it made any payment to Mr. Dorroh. At the time, Dorrohs insisted to Deerbrook that the workers' compensation carrier had denied the claim, but refused to document that assertion. (As it turned out, an Administrative Law Judge eventually found that the workers' compensation claim was valid, and ordered an award in excess of $400,000. Had the $15,000 been paid, the workers' compensation carrier would have had first right to it.)

California law provides that a workers' compensation carrier liable on a claim to an insured is subrogated to any proceeds that the insured may receive from other sources. See State Farm General Ins. Co. v. Wells Fargo Bank, N.A., 143 Cal.App.4th 1098, 1106 n.5, 49 Cal. Rptr.3d 785 (2006) (citing West's Ann.Cal.Lab.Code § 3852). Had Deerbrook paid its policy to Dorrohs without the workers' compensation carrier's
/ / / / /


Page 7 - MEMORANDUM OPINION

consent, Debtor may himself have been exposed to a recoupment action by the carrier.

Similar circumstances existed in Coe v. State Farm Mutual Automobile Ins. Co., 66 Cal.App.3d 981, 66 Cal.Rptr. 331 (1977). In that case, the insurer rejected a demand for its policy limits which made no provision for the consent of an involved workers' compensation carrier. The Court of Appeals held that the settlement, as conceived by the claimant, could not have been effective without the fund's written consent: "In the absence of reasonable provisions for the legal rights of the fund, we conclude that State Farm cannot be held liable for bad faith 'rejection of a reasonable settlement offer'." Coe, 66 Cal.App.3d at 993 (Internal citations omitted.)

Coe is controlling in this case. Since the Dorrohs refused to settle in a manner that gave appropriate consideration to the workers' compensation claim, Deerbrook cannot be said to have violated any duty to its insured by failing to settle prior to trial. It follows that the claim now held by the estate is of little to no value, and the Trustee's disposition of the claim for $125,000, plus payment of all claims other than Dorrohs', is appropriate. Moreover, it is clear that the bad faith claim would be vigorously defended by Deerbrook, and would entail considerable expense to the estate. The most likely result of the scenario would be a defense verdict, and an administratively insolvent estate.

Dorrohs argue, at least implicitly, that the principal failing of Deerbrook's proposal is that it is less advantageous to the estate and creditors than their own. Under the two proposals, the estate's

Page 8 - MEMORANDUM OPINION

administrative expenses would be paid, as would creditors other than the Dorrohs themselves.[4] The Dorrohs' proposal calls for their acquisition of the claim, with their stated intention to initiate an action against Deerbrook. The outcome would be no different than if the Trustee brought the action: a defense verdict, after considerable expense to both Dorrohs and Deerbrook.[5] Dorrohs argue that they are entitled, if they see fit to do so, to take their chances in court. If the outcome of a sale of the claim to the Dorrohs had no impact on anyone else, there might be something to the argument; however, the litigation will cost Deerbrook and its shareholders a considerable amount of money. Notwithstanding Dorrohs' argument at trial ("You can favor the insurers if you like. .") the insurer is just as entitled to equitable treatment as anyone else. It is not equitable to subject Deerbrook to unfounded litigation, and the Dorrohs to a defense verdict and liability for the costs associated with the case. It cannot be said that the Dorroh proposal is superior to Deerbrook's.

Dorrohs argue that Deerbrook's proposal is unlawful, because it violates the distribution scheme mandated by Code §726(b). All claims, other than the administrative claims of the Trustee and his professional,

---

[4] The Dorrohs filed a proof of claim in the amount of $18,273,762.90. All other unsecured claims (no secured claims have been filed) total $19,637.43, after elimination of a duplicate claim.

[5] The Trustee asserts that the Dorrohs' planned action against Deerbrook would also force the estate to incur significant costs when discovery is sought from the trustee. It is not clear what information the trustee could provide respecting events occurring before the bankruptcy case was commenced, or why he would be unreasonably inconvenienced by a Dorroh-Deerbrook action.

Page 9 - MEMORANDUM OPINION

share the same priority. Under Deerbrook's proposal, all creditors other than Dorrohs would receive 100% of their claims; Dorrohs would receive $125,000, or less than 1% of their claim. Deerbrook responds to the objection by pointing out that it intends to buy the claims from the other claimants (and then withdraw them), so that there will be, technically, no distribution from the estate other than to priority claimants and to the Dorrohs. Dorrohs would be alone in their class of creditors, and receive 100% of the funds available for distribution.

Assume for argument's sake that the Court should find that Deerbrook's proposed treatment of claims other than Dorrohs' is an impermissible evasion of §726(b), and that the matter should be resolved simply by payment to the estate of $125,000, plus an amount equal to the estates' administrative expenses. The result would be a dividend of roughly $124,865 to the Dorrohs, with the remaining $135 divided between the remaining creditors.

Accepting Dorrohs argument on this point, whatever its technical merits, exalts form over substance in a manner that benefits nobody. Creditors other than Dorroh would be deprived of payment in full of their claims (admittedly a windfall), and Dorrohs would receive slightly less than proposed. The treatment of creditors other than the Dorrohs is not so inequitable as to invalidate the offer, or render it inferior to Dorrohs' offer.

### IV. CONCLUSION

The Trustee's proposed liquidation of the claim held by the estate is fair and equitable to all creditors, and the proposed consideration equals or exceeds the value of the asset. In disposing of

Page 10 - MEMORANDUM OPINION

an otherwise contested claim by the estate, the Trustee avoids unnecessary costs and the likelihood of an adverse outcome. Creditors contesting the proposed disposition have not presented a superior alternative. The Trustee's motion should be allowed.

Counsel for the Trustee shall lodge an order allowing the motion, and directing the Trustee and Deerbrook to carry out the terms of the Deerbrook proposal.

This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law.

FRANK R. ALLEY, III
Bankruptcy Judge

APPENDIX A to Memorandum opinion

CLERK U.S. BANKRUPTCY COURT
DISTRICT OF OREGON

JAN 1 1 2010

LODGED_____REC'D_____
PAID_____DOCKETED___

Philip Scott McCleery, Esq.
Gartland, Nelson, McCleery, Wade & Walloch, P.C.
P.O. Box 11230
Eugene, OR 97440
Telephone No.: 541.344.2174
Fax No.: 541.344.0209

Attorneys for Deerbrook Insurance Company

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

In re   CEDAR S. WARREN,

Debtor.

Case No. 07-60674-fra7

STATEMENT OF OFFER (to be docketed on January 11, 2010)

## STATEMENT OF OFFER OF DEERBROOK INSURANCE COMPANY

In response to the Court's request, Deerbrook Insurance Company submits its best offer for settlement of the bankruptcy estate's potential claims for bad faith against Deerbrook Insurance Company.

A.   Summary of Deerbrook's Offer

1.   $125,000 for prepetition claims not acquired by Deerbrook Insurance Company. This sum is currently on deposit with the Trustee.

2.   The cash sum necessary to pay in full the bankruptcy estate's allowed administrative expenses.[1]

3.   Acquisition by assignment to the extent possible of all allowed general unsecured claims of creditors other than Robert and Barbara Dorroh or their agents or attorneys after use of Deerbrook's best efforts to acquire assignment

---

[1] Deerbrook is informed and believes that administrative expenses are now approximately $75,000 but will increase until the case is closed. Deerbrook will pay the total amount of current *and future* administrative expenses *in full*.

1

of those claims; for the assignment, Deerbrook agrees to pay an amount equivalent to 100 percent of the face amount of each claim plus post-petition interest accruing at the rate of 5 percent from the petition date through the date of payment.

B. Prepetition Debt

The payment of $125,000 for prepetition debt will not change. Deerbrook will ensure that the sum of $125,000 will be available for payment by the Trustee of prepetition debt regardless of the amount of administrative expenses. The sum of $125,000 is currently on deposit with the Trustee.

C. Administrative Expenses

Deerbrook will pay the amount necessary to cover Chapter 7 administrative expenses that are allowed by the Court. Deerbrook is informed and believes that administrative expenses are now approximately $75,000 and recognizes that administrative expenses will increase until the case is closed. Deerbrook waives any right it might have to object to the fees and expenses of the Trustee and his professionals.

D. Acquisition of Unsecured Claims

It is Deerbrook's intent to acquire all general unsecured claims other than the claim of Robert and Barbara Dorroh or any claim asserted by them or their agents or attorneys. Deerbrook will use its best efforts to acquire each of those claims. According to the Court's claims register as of January 7, 2010, there are 17 general unsecured claims asserted against the estate other than the claim of Robert and Barbara Dorroh. One of those claims (Claim No. 8) has previously been disallowed as a duplicate claim and will not be acquired by Deerbrook. The allowed general unsecured claims other than the Dorroh claim total approximately $20,300.

Deerbrook intends to pay each creditor 100 percent of the face amount of each allowed general unsecured claim plus interest accruing at the rate of 5 percent from the date on which the bankruptcy petition was filed through the date of payment. Deerbrook is informed and believes that the applicable rate of interest according to 28 U.S.C. § 1961 on the petition date (March 16, 2007) is 4.93 percent. Deerbrook is agreeing to pay the slightly higher interest rate of 5 percent. Once Deerbrook receives a

///

1  valid assignment of each claim, and after the time period under Rule 3001(e) of the Federal Rules of
2  Bankruptcy Procedure has expired, Deerbrook will withdraw each assigned claim.
3      To the extent Deerbrook is unable to obtain assignment of a claim, its counsel will file a
4  declaration describing Deerbrook's efforts to acquire the claim. Given the very small amount of some
5  claims, Deerbrook anticipates that some creditors will not respond to Deerbrook's offer.
6  E.   <u>Conclusion</u>
7      Deerbrook estimates that its offer has a cash value of about $250,000 in cash payable to the
8  estate and additional cash value of $20,300 (plus interest) to the unsecured creditors other than Robert
9  and Barbara Dorroh.

15  DATED: January 8, 2010    GARTLAND, NELSON, MCCLEERY, WADE &
16      WALLOCH, P.C.
17
18      By: _____
    PHILIP SCOTT MCCLEERY
    Co-counsel for Deerbrook Insurance Company

301160969.2

3

```
APPENDIX B to
Memorandum Opinion
```

1  Peter C. McKittrick, OSB #852816
   Tara J. Schleicher, OSB #954021
2  Farleigh Wada Witt
   121 SW Morrison Street, Suite 600
3  Portland, Oregon 97204-3136
   Telephone: (503) 228-6044
4
   Joseph W. Carcione, Jr. (CA Bar No. 056693)
5  Aaron B. Markowitz, Esq. (CA Bar No. 220694)
   Joshua S. Markowitz, Esq. (CA Bar No. 224256)
6  Carcione, Cattermole, Dolinski, et al
   601 Brewster Avenue, #200
7  PO Box 3389
   Redmond City, CA 94064
8  Telephone (650) 367-6811

9  Attorneys for Creditors Robert and Barbara Dorroh

CLERK U.S. BANKRUPTCY COURT
DISTRICT OF OREGON

JAN 1 1 2010

LODGED_____ REC'D_____
PAID_____ DOCKETED___

10             IN THE UNITED STATES BANKRUPTCY COURT

11                  FOR THE DISTRICT OF OREGON

12  In re                        Case No. 07-60674-fra7

13  Cedar S. Warren,             ROBERT AND BARBARA DORROHS'
                                 FINAL BID FOR THE "BAD FAITH"
14              Debtor.          CLAIM

15                               Trial Date: January 4, 2010
                                 Time: 10:00 a.m.
16                               Courtroom: 6

17      Robert and Barbara Dorroh (the "Dorrohs") want to first note that the following bid is

18  meant to be a simple exchange. The Dorrohs are giving up **any and all** further interest in this

19  bankruptcy proceeding. They will take **no** money at all on their claim from these proceedings,

20  and will have **no** standing in these proceedings. They will be foregoing their entire $19

21  million-plus claim against the bankruptcy estate. In consideration, they will be taking

22  assignment of the "bad faith" claim against Deerbrook. If the Court finds that any of the

23  language used does not adequately communicate the intent of that proposal, then the Dorrohs

24  ask that they be allowed to modify that language as necessary.

25      Further, the Dorrohs have attempted to respond to each and every objection raised by

26  the Trustee, but unfortunately cannot anticipate the new objections that the Trustee intends to

27  raise. Along these lines, the Dorrohs ask that the Court consider their proposal in its simplest

28  form, that is an offer to create a surplus estate. To accomplish this, the Dorrohs offer to pay all

174819 / abm
                                        1.
             ROBERT AND BARBARA DORROHS' FINAL BID FOR THE "BAD FAITH" CLAIM

1  of the claims of this estate (other than the Dorrohs' claim itself) and its administrative costs,
2  plus one dollar ($1.00) With respect to the Dorrohs' claim, the Dorrohs give up all interests
3  and rights to obtain money from the bankrupt estate thereby creating a surplus estate. In
4  exchange for Dorrohs' payments and giving up interests in the bankruptcy proceeding and
5  creating a surplus estate, the Dorrohs ask only for the assignment of the bankrupt estate's bad
6  faith claim against Deerbrook Insurance Company ("Deerbrook").
7      The Dorrohs bid is as follows:
8      1.    Robert and Barbara Dorroh (the "Dorrohs") offer to take assignment of any and
9  all of the estate's legally assignable claims that it may have, or hereinafter may acquire, against
10 Deerbrook, based on Deerbrook's alleged failure to comply with the implied covenant of good
11 faith and fair dealing (the "Claims").
12
13     2.    In consideration of the assignment as provided in paragraph 1 above, the
14 Dorrohs will covenant and agree not to further pursue their claims in this bankruptcy
15 proceeding. By this, it is agreed that the Dorrohs will receive no payment on their claim in the
16 bankruptcy estate, and the Dorrohs shall no longer have standing in this bankruptcy proceeding
17 as a result of their claim. For purposes of closing the bankruptcy estate, the Dorrohs' claim
18 shall be treated as if it has been withdrawn. It is further agreed that this clause is not intended
19 to limit or obviate Deerbrook's obligations to the Trustee, the Debtor or the Dorrohs, and it is
20 the intent of the parties that Deerbrook's obligations to the Trustee, the Debtor or the Dorrohs
21 not be affected at all by this clause.
22
23     NOTE: The Dorrohs prefer that their agreement to remove themselves from the
        bankruptcy proceeding be worded as stated above; however, if the Court is
24      going to require that the language proposed by the Trustee be used, then those
25      words should be used in place of paragraph 2 as follows:
26
        Upon assignment by the Trustee as provided in paragraph 1 above, the claim of the
27
        Dorrohs shall be deemed withdrawn and the Dorrohs shall no longer have standing in this
28
        bankruptcy proceeding.

174819 / abm                                    2.
                    ROBERT AND BARBARA DORROHS' FINAL BID FOR THE "BAD FAITH" CLAIM

3.  In further consideration of the assignment as provided in paragraph 1 above, the Dorrohs would pay the Trustee a sum of money sufficient to cover in full: (a) all valid and timely filed unsecured claims, plus interest thereon at the legal rate pursuant to 11 USC § 726(a)(5); (b) the Trustee's commission and all allowed administrative expenses, including the Trustee's attorneys fees; and (c) one additional dollar, so as to ensure that the subject estate is a surplus estate.

> NOTE: The Dorrohs are unaware of the total amount that would cover the allowed unsecured claims with interest as well as all of the administrative expenses. Once this amount can be ascertained, the Dorrohs will immediately deposit sufficient funds with the Trustee.

4.  The Dorrohs and their counsel warrant, represent, and agree to ensure that the funding of the moneys to be deposited with the Trustee does not violate any of the applicable Rules of Professional Conduct for either the State of California or the State of Oregon. Towards this end, the Dorrohs and their counsel will submit, *in-camera* to the Court, any and all information necessary for the Court to make its determination in this regard.

5.  The assignment under paragraph 1 above of the Claims is without warranty, express or implied. The Trustee does not make any warranty or representation as to his ability to assign the Claims, and does not make any warranty or representation as to the validity of the Claims.

6.  The Trustee agrees to provide all documents evidencing any communications between himself or his counsel in this bankruptcy on the one part, and Deerbrook or their counsel on the other part, which documents post-date the September 3, 2009 production. This shall be a one-time production in the same form and manner that the documents were previously produced, and upon that production of documents, the Trustee and his counsel have fulfilled any and all obligations under this clause.

7.  The Dorrohs agree that neither the Dorrohs nor their attorneys, representatives,

174819 / abm

3.

ROBERT AND BARBARA DORROHS' FINAL BID FOR THE "BAD FAITH" CLAIM

1 heirs, or assigns, will seek the deposition of the Trustee or his counsel, David Mills, Esq., in
2 any proceeding. Further, the Dorrohs will agree to indemnify the Trustee and his counsel,
3 David Mills, Esq., for all reasonable costs and expenses arising therefrom, if Deerbrook takes
4 the deposition of either the Trustee or his counsel, David Mills, Esq. in any proceeding
5 involving the Dorrohs.

      8.      The Dorrohs and the Trustee agree that it is the unambiguous express intent of the parties to create a valid assignment of the estate's rights to pursue claims arising out of Deerbrook's alleged failure to comply with the implied covenant of good faith and fair dealing. In interpreting any terms in this agreement, they must be interpreted in a manner that would promote litigation on the merits relative to those claims.

Dated: January 11, 2010

CARCIONE, CATTERMOLE, DOLINSKI,
OKIMOTO, STUCKY, UKSHINI,
MARKOWITZ & CARCIONE, LLP


By: /s/ Joshua S. Markowitz, Esq.
Attorney for Robert and Barbara Dorroh

174819 / abm

4.
ROBERT AND BARBARA DORROHS' FINAL BID FOR THE "BAD FAITH" CLAIM